UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RICHARD KENNEDY,<br><br>              Petitioner,<br><br>   v.<br><br>UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, DISTRICT DIRECTOR,<br><br>              Respondent. | Case No. 5:11-cv-02407-EJD<br><br>**ORDER GRANTING RESPONDENT'S MOTION TO DISMISS FOR LACK OF JURISDICTION AND MOTION FOR SUMMARY JUDGMENT.**<br><br>**[Docket Item No. 20]** |

Presently before the Court is a petition filed by Petitioner, Richard Kennedy. On his Certificate of Naturalization, Petitioner seeks relief to amend both his name and date of birth. See Pet., ¶ 1-3, Docket Item No. 1. Respondent moves the Court to dismiss Petitioner's request to amend his name for lack of subject matter jurisdiction. Respondent also seeks summary judgment denying Petitioner's request to amend his date of birth. See, Motion Brief, Docket Item No. 20. Petitioner has not submitted written opposition to Respondent's brief. His Petition, however, does provide grounds, which if proven, support the relief sought. Consistent with Supreme Court authority, and given that the Petitioner appears *Pro Se*, those grounds have been construed liberally. See, Haines v. Kerner, 404 U.S. 519, 520-21(1972).

Having reviewed the relevant portions of the record – including the Petition and the Respondent's brief – the Court grants the Respondent's motions for dismissal and summary judgment.

1

## I. BACKGROUND

Petitioner's birth name was Van Thanh Nguyen. See, CAR092-94.[1] He states that he was born on January 1, 1952. See, Pet., at ¶ III(a). To avoid being drafted into the Vietnamese army, Petitioner states that he told "Vietnamese authorities his birth date was January 1, 1955 making him ineligible for the draft." Id., at ¶ III(b)

Petitioner entered the United States on October 22, 1975. He listed his name as Van Thanh Nguyen and his date of birth as January 1, 1955 on his application to enter the United States. See, CAR 092-094. On September 21, 1978 he further listed his birth date as January 1, 1955 when he applied for permanent residency. See, CAR 078-80. The same birth date was listed when he applied for citizenship on July 14, 1982. See, CAR 073-76. On July 5, 1984, the United States District Court for the Northern District of California naturalized Petitioner. See, Pet., at ¶ III(c); CAR 064. At that time, the court issued a decree granting Petitioner's petition for a name change from Van Thanh Nguyen to Richard Kennedy. See, CAR 065. The decree was made pursuant to 8 U.S.C. § 1447(e). His Certificate of Naturalization now bears the name, Richard Kennedy – a name he assented to, and chose "based on the names of two previous U.S. Presidents." Id., at ¶ III(c).

On October 13, 1992 Petitioner claims that he sought and obtained an order adjusting his date of birth in Santa Clara County Superior Court. The order gives the adjusted date of birth as January 1, 1952. Id., at Pet. ¶ III(a) and Ex. B, ('Order to Adjust Birth Record'). He claims that he sought this order upon "learning of his official birth date" in 1992. Id. at Ex. B; CAR 027-28.

On March 17, 2006 Petitioner filed an N-565 form seeking a replacement for his Certificate of Naturalization. On this document – filed fourteen years after obtaining the state court order regarding his adjusted birth date – Petitioner again listed his date of birth as January 1, 1955. See, CAR 060. On September 20, 2010 Petitioner filed a second N-565 form seeking to amend the date of birth of his Certificate of Naturalization to January 1, 1952. On November 12, 2010, the request was denied. Later, that same month, he appealed the denial of his application. See, CAR 032.

---

[1] Citations with "CAR" prefix refer to the pages from Petitioner's Certified Administrative Record that Respondent filed under seal on August 30, 2011.

2
Case No. 5:11-cv-02407-EJD
ORDER TO DISMISS FOR LACK OF JURISDICTION AND MOTION FOR SUMMARY JUDGMENT.

On January 3, 2011 Petitioner made a further attempt to change his date of birth by filing another N-565 form. This application sought the same relief as the September 20 application. Again, only a change of date of birth was sought. See, Pet., at ¶ III(d); CAR 015-16. On February 14, 2011 the District Director of the USCIS Nebraska Service Center denied this second application with the appeal being denied on March 24, 2011. See, Pet., at ¶ III(d); CAR 002-10.

On May 17, 2011 Petitioner filed the present Petition before the Court. The Petition seeks amendment to date of birth and, for the first time, change to his name on the Certificate of Naturalization. See, Pet., at ¶ III(a). On November 15, 2011 motion to dismiss for lack of jurisdiction and motion for summary judgment were filed by the Respondent. On February 7, 2012 this Court granted an order providing that both motions be determined without oral argument.

## II. ISSUES FOR DETERMINATION

Respondent summarized the two issues that are before the Court. Minor modifications have been made as follows:

A. Whether the Court possesses subject matter jurisdiction to order Respondent to amend the name on the Certificate of Naturalization of Petitioner, Richard Kennedy, to his native born name, Van Thanh Nguyen? If not, does Rule 12(b)(1) of the Federal Rules of Civil Procedure require the Court to dismiss the portion of the Petition seeking this relief?

B. Whether Petitioner has met his burden of proof to show his entitlement to an amended Certificate of Naturalization that bears a different date of birth to that presently inscribed on the record? If not, does Rule 56 of the Federal Rules of Civil Procedure require the Court to issue summary judgment denying the portion of the Petition seeking this relief?

Before engaging the analysis, it is worth noting that entangled within these motions for determination is the spectre of immigration law – an area of law described as "notoriously intricate" and "second only to the Internal Revenue Code in complexity." Castro–O'Ryan v. U.S. Dep't of Immigration and Naturalization, 847 F.2d 1307, 1312 (9th Cir.1988). Amongst other reasons – including the fact that it presents an issue of first impression in the Northern District of California – close attention has been given to the disposition of this case and the relevant law that applies in the naturalization context.

Case No. 5:11-cv-02407-EJD
ORDER TO DISMISS FOR LACK OF JURISDICTION AND MOTION FOR SUMMARY JUDGMENT.

## III. DISCUSSION

### A. Whether the Court Possesses Subject Matter Jurisdiction to Order Respondent to Amend Petitioner's Name on his Certificate of Naturalization

Respondent moves to dismiss the Petition based on lack of subject matter jurisdiction. Pursuant to 12(b)(1) Fed. R. Civ. P., the Court may dismiss an action for lack of subject matter where the court has neither constitutional, nor statutory basis for a determination. See, Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir.2004).

Rule 12(b)(1) motions may challenge jurisdiction facially or factually. Id. "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Id. It is the plaintiff who bears the burden of proving the existence of subject matter jurisdiction. See, Thompson v. McCombe, 99 F.3d 352, 353 (9th Cir.1996).

If the Court determines that it lacks subject matter jurisdiction, the Court must dismiss the action pursuant to Fed. R. Civ. P. 12(h)(3).

**1. Respondent's Argument: In re Chan**

Respondent's argument is based on the theory that this Court is without jurisdiction to amend Petitioner's name on his naturalization record because the Immigration and Nationality Act only permits a federal court to grant name changes for persons when they take their oath for naturalization. Respondent relies on 8 U.S.C. § 1447(e) to support its position. Relevantly, that section provides: "It shall be lawful *at the time* and as a part of the administration by a court of the oath of allegiance under section 337(a) for the court, in its discretion, upon the bona fide prayer of the applicant included in an appropriate petition to the court, to make a decree *changing the name* of said person, and the certificate of naturalization shall be issued in accordance therewith." 8 U.S.C. § 1447(e). (*emphasis added*)

Respondent asserts that since the Act uses the words "at the time," it was the intention of Congress to limit the time of a decree, to change the name of a person, to the time at which the naturalization took place. Respondent contends that the Court lacks subject matter jurisdiction to

1   make the amendment to reflect Petitioner's native born name, Van Thanh Nguyen. As the Court
2   understands Respondent's argument, its position is that the Court is without subject matter
3   jurisdiction in *all* cases that involve name change after a person's naturalization.

4   In support of its position, Respondent places heavy reliance on the case, In re Chan, 426 F.
5   Supp. 680, 681 (S.D.N.Y. 1976) ('Chan'). In that case, the court found in favor of the government
6   because the Court was "unwilling to alter the name which appeared on [the petitioner's] papers"
7   after naturalization. Id. The court provided little explanation for its decision other than pointing to
8   8 U.S.C. § 1447(f) in footnotes.[2] Relevantly, in 1976, that provision was framed in language
9   similar to its present provision. That is, "it shall be lawful *at the time* and as a part of the
10  naturalization of any person, for the court, in its discretion...to make a decree changing the name of
11  said person." Based on 8 U.S.C. § 1447(f), the Chan court refused to grant the amendment in favor
12  of the petitioner.

13  Here, factual similarities exist between Chan and the instant case. In Chan, the petitioner
14  sought to change his name after naturalization from Woodrow Wilson to Chan Chung. In this case,
15  Petitioner seeks to change his name after naturalization from Richard Kennedy to Van Thanh
16  Nguyen. Given these similarities, Respondent submits that the Court should find – as the court did
17  in Chan – that it lacks subject matter jurisdiction to issue an amended naturalization certificate.

18  The Court, however, is guarded in hastening a determination on jurisdiction in accordance
19  with Respondent's submission. While the Court agrees that factual similarities do exist, it is
20  important to consider other cases that have addressed the question of whether a court has subject
21  matter jurisdiction. Depriving a court of subject matter jurisdiction is an inquiry not "lightly" taken.
22  See, Ubl v. IIF Data Solutions, 2009 WL 1254704 *1, 2009 U.S. Dist. LEXIS 38266 *7(E.D.Va.
23  May 5, 2009) (stating also that "subject matter jurisdiction is the bedrock of a federal court's power
24  to adjudicate controversies.") See also, United States v. Cotton, 535 U.S. 625,630 (2002). It is for
25  this reason why the Court reviews further decisions not referred to in Respondent's brief, nor

---

[2] While the court cited this section in Fn 1, nowhere in the judgment did the court expressly refer to subject matter jurisdiction. Upon reading Chan, one may infer that reference to the language in 8 U.S.C. § 1447(f) provided the underlying basis for lack of subject matter jurisdiction, but the court only said that it was only "unwilling" to alter Chan's name based on the theory that it did not have discretion to change the petitioner's name.

5

Case No. 5:11-cv-02407-EJD
ORDER TO DISMISS FOR LACK OF JURISDICTION AND MOTION FOR SUMMARY JUDGMENT.

asserted by Petitioner. Addressing the issue of jurisdiction is perhaps even more important in cases such as the present where the determination will directly affect the Petitioner's rights; ever more so where he acts *Pro Se* and has filed no written response in relation to the Respondent's motion.[3]

### 2. Reconciling the Authorities: Garcia

In a case that also bears similarities with the present one, the Court turns to Petition of Garcia, 65 F. Supp. 143 (W.D. Pa 1946) ('Garcia'). In that case, the petitioner was naturalized on June 1, 1938. His Certificate of Naturalization was then issued. The name on the document was 'Emilio Leal Garcia', which the petitioner then sought to have corrected to 'Emilio Leal.' Critical to the disposition of the decision, the petitioner testified to the following facts: a) that he never requested his name be changed to Emilio Leal Garcia, and that such reference must have been a mistake by the clerk who assisted his petition; b) that after entry into the country on November 24, 1920, until naturalization on June 1 1938, he continuously used the name Emilio Leal and noted that the name appeared on his birth certificate, marriage certificate and social security registration; c) that while he signed his petition for naturalization as both Emilio Leal and Emilio Leal Garcia, he explained in testimony that in his mother country (Spain), it was *customary* to sign the mother's maiden name as the person's *last name* with respect to important documents. (*emphasis added*)

Based on the above testimony, the court noted that persons applying for citizenship – through their lack of understanding – place "great reliance on the clerks and representatives of the Government." Id. 65 F. Supp. at 145. The court inferred from the testimony that it readily understood how a clerk, who assisted the petitioner, "unintentionally and innocently" set forth a name *not* chosen by the petitioner. Id.

The Government's position did not dispute the testimony proffered by the petitioner, nor the inferences made by the court supporting his claim. Rather, the Government challenged the petition solely on the basis that the court was without jurisdiction to change the petitioner's name. The argument was identical to Respondent's argument in the present case. Specifically, that since

---

[3] Finding in favor of the Respondent, based on subject matter jurisdiction, effectively extinguishes any chance of reviewing the merits of the Petitioner's Petition. It precludes relief before the claim has any chance of meaningful review.

the relevant statute used the words: 'at the time,' it was the intention of Congress to limit the time to which the court could amend name changes to the time the naturalization took place.[4]

In finding for the petitioner, the court examined the Rules of Civil Procedure – specifically, Rule 60(a), which provided that: "Clerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission may be *corrected* by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders."[5] Further, the court looked to Rule 81(a)(2).[6] The substance of Rule 81(a)(2) provides that Rules of Civil Procedure are directly applicable to naturalization proceedings. The court also discussed Tutun v. United States, 270 U.S. 568, 46 S.Ct.,425 (1926), which stands for the proposition that naturalization proceedings are essentially judicial proceedings.[7] Viewing these rules and cases collectively, the court then reasoned as follows:

> [I]t seems common sense to say that there is no sound ground for making a distinction between the right of a court, under the Rules just referred to, to alter its records for the purpose of correcting a mistaken entry when that entry has been made at the instance of the court itself, and when made as the result of the mistake of a party to

---

[4] Section 6 of the Act of June 29, 1906, 34 Stat. 598, 8 U.S.C.A. 396, which was the law at the time, stated: "That it shall be lawful, at the time and as a part of the naturalization of any alien, for the court in its discretion, upon the petition of such alien, to make a decree changing the name of said alien." The petitioner was naturalized on June 1, 1938.

[5] Rule 60(a) of the Federal Rules of Federal Procedure mirrors the verbiage of the equivalent rule in 1946.

[6] Rule 81(a)(3) of the Federal Rules of Federal Procedure mirrors the verbiage of the equivalent rule in 1946.

[7] See, Petition of Weltzien, 68 F.Supp. 1000, 1001 (1946): "We may start with the basic proposition that a proceeding for naturalization is essentially a judicial proceeding and that an order of the district court granting or denying a petition for naturalization is a final decision which is reviewable by the Circuit Court of Appeals. Tutun v. Unites States, 270 U.S. 568, 46 S.Ct. 425, 70 L.Ed. 738. It therefore follows that an order admitting an alien to citizenship is a judgment of the same standing as any other judgment of a court having jurisdiction." For more recent cases – outside the context of a 'name change' amendment and where the Ninth Circuit has examined the right of courts to exercise subject matter jurisdiction, see Matter of Shrewsbury, 1996 WL 64988, at *1 (9th Cir.1996). There, the Court found that "because the order naturalizing th[e] petitioner was a court order, the court had jurisdiction under the prior statute to amend it." Id. See also, In re Lee, No. C06–80150 MISC MJJ, 2007 WL 926501 at*1 (N.D.Cal. Mar.26, 2007) (Petitioner offered evidence that he was naturalized in 1973 by court order.) Note, after October 1991, the sole authority to naturalize persons "as citizens of the United States" was conferred to the Attorney General. See, 8 U.S.C.A. § 1421(a). However, the statute still states that the court still retains authority to administer oaths and make name changes. 8 U.S.C.A. § 1421 (b)(3)(C) and 8 U.S.C. § 1447(e), respectively.

> the [naturalization] proceeding [including the mistakes by a government clerk assisting that party]. No one questions the right and duty in the former case. Why should it be questioned in the latter? The underlying purpose in each case is the same, namely, to have the permanent records of the court disclose the actual facts.

Garcia, 65 F. Supp. at 147.

Needing to ensure that permanent records of the court disclose the *actual* facts upon which a petition is based, the court held that it had the power to substitute the name Emelio Leal Garcia to his preferred name, Emelio Leal. Id. The reasoning was further predicated on the following factual conditions.

First, the amendment to the petition was merely one for clerical error that was made at the time of the petition. Second, the clerical error was made, in part, "due to the apparent confusion which existed on part of the clerk, who assisted in the preparation of the petition," and the petitioner himself. Id. Had such confusion not occurred, the clerical error simply would not have been made. Third, and as a corollary of the second, the name inscribed on the document was *not* made at the petitioner's own choice because of the confusion between the clerk and the petitioner. The court "realize[d] that individuals applying for citizenship, through their lack of understanding and inability to understand English, place great…reliance on the clerks and representatives of the Government." Id. at 145. It was these combined facts that provided the basis for the court's holding that clerical errors, made at the time of a petition, could be amended by the court – and that it had subject matter jurisdiction to do so. Incidentally, the court further held that "clear and convincing evidence"[8] was required to allow a court to make an amendment for clerical error to a petitioner's name. Id. As the petitioner had sufficient evidence to meet that standard, the amendment was made, accordingly.

---

[8] For discussion of a more recent case holding the "clear and convincing" standard, see Hussain v. U.S. Citizenship and Immigration Services, 541 F. Supp. 2d 1082, 1087 (2008). See, Hoffmann-La Roche, Inc v. Promega Corp 1999 WL 1797330 at * 25 (N.D.Cal.1999), discussing the standard in the patent context. ("The "clear and convincing" standard of proof of facts is an intermediate standard which lies somewhere between "beyond a reasonable doubt" and a "preponderance of the evidence." See also, Addington v. Texas, 441 U.S. 418, 425 (1979). Clear and convincing evidence requires proof that a contention is "highly probable." Colorado v. New Mexico, 467 U.S. 310, 316 (1984); Buildex, Inc. v. Kason Indus., Inc., 849 F.2d 1461, 1463 (Fed Cir. 1988)."

### 3. Other Cases Supporting Garcia

Given that the issue of 'name change amendment' is one of first impression in the Northern District of California, the reasoning in Garcia is most instructive – it is also supported by the reasoning in In re Holland D.C., 237 F. 835 (1916). ('Holland').[9] In Holland, a person of Norwegian decent petitioned the court to amend the surname on his naturalization record to Holland (from Johansen). The court denied the petition because the omission of the petitioner's name, at the time of his naturalization, was not to "correct a mistake in the record, but a change that which might have been adopted" at an earlier time at the petitioner's own *choice*. Id. (*emphasis added*.) As such, the court held that it was "without power to make the name change" to the petitioner's record. Id. Had the petitioner's name been mistakenly made by a government clerk in circumstances similar to that of Garcia, the court may well have granted the petition.[10]

Further, it is worth noting that Garcia has been discussed with approval in a more recent decision, Vargai v. INS, Dist. Director, 932 F. Supp. 1245, 1246 (D. Or.1996) ('Vargai'). There, the court said: "I find the case of Garcia to be more analogous to this situation…in Garcia, petitioner sought to correct the name on his naturalization certificate. As in this case, petitioner produced ample evidence that his [birth date] was not correct on his certificate. Furthermore, petitioner explained that he was *confused and misunderstood* the U.S. clerk when he was filling out his documents. The court held that petitioner should be allowed to correct the mistake."

---

[9] Respondent cites this case in its brief for dismissal under Rule 12(b)(1) Fed. R. Civ. P., but its holding does not stand for the proposition that the court is without subject matter in all instances involving name change amendments. Specifically, and as reasoned above, the court indicated in Holland that *had* there been a "mistake in the record" – rather than a *choice not* to adopt an earlier name – the court may well have granted the amendment. Holland 237 F. 836.

[10] Respondent also cites another case, In re Perkins, 204 F. 350, 351 (1913). In that case, the petitioner was naturalized as Frederick Persky in 1898. In 1912, his name changed by order of a county court to Perkins. In 1913, he petitioned the court to have his naturalization record changed by substituting the name Perkins for Ersky. The Court denied his application, stating: "I think the court is *without power* to do what is asked, in the absence of some statutory authority." 204 F. at 351. The Court observes that this proposition in Perkins was not supported by any real reasoning such as that implicated in Chan (even in that case, there was little reasoning upon which the holding was based, and certainly no express statement to the effect that the court "was without power" as was affirmatively stated in Perkins 204 F. 350, 351). Interestingly, Chan did not cite Perkins. Chan did, however, cite Garcia. As such, the Court gives Perkins little persuasive weight for the proposition it purports to hold – particularly in light of Garcia which stands for an opposing proposition. See also Holland, 237 F. 835.

9

Case No. 5:11-cv-02407-EJD
ORDER TO DISMISS FOR LACK OF JURISDICTION AND MOTION FOR SUMMARY JUDGMENT.

While <u>Vargai</u> involved a 'birth date' amendment – not a 'name change' amendment – reference to <u>Garcia</u> illustrates modern judicial approval of that decision.[11] Given the dearth of cases in this field of law, <u>Vargai</u> is a useful illustration of <u>Garcia's</u> reasoning. <u>See</u> also, <u>Liu v. INS</u>, 1998 WL 809037, at *3 (N.D.N.Y. Nov. 17, 1998).

**4. Summary of Relevant Law**

In light of the foregoing authorities, the Court is left with the task of resolving the tension as to whether a federal court possesses subject matter jurisdiction to amend a Certificate of Naturalization with respect to a petitioner's name. On the one hand, <u>Chan</u> holds that no such power exists; on the other, <u>Garcia</u> holds that subject matter jurisdiction does exist, but in very limited circumstances – that is, to instances where there has been clerical error at the time of the petition for naturalization.

Because of the detailed reasoning stated in <u>Garcia</u> – which is buttressed by the *dicta* in <u>Holland</u> and <u>Vargai</u> – the Court holds that it may exercise power over cases that involve clerical error at the time of petitioner's oath for naturalization.[12] While the Court gives deference to the language in 8 U.S.C. § 1447(e), the Court holds that such language was not intended to preclude subject matter jurisdiction in *all* cases involving 'name change' amendments, and there is certainly no express statement in the statute stating as much. The holding in <u>Garcia</u> reinforces this view.[13] As such, the Court holds that subject matter jurisdiction may be exercised in cases involving 'name change' amendments – after naturalization – where there has been clerical error at the time of naturalization. For guidance, the Court suggests that clerical errors which invoke subject matter

---

[11] <u>See</u>, <u>Hussain</u>, 541 F.Supp.2d 1082, 1087 (2008) for more recent approval of <u>Garcia</u>, at least with respect to evidentiary standard in that decision.

[12] Given that the Petitioner's Certificate was issued pre-1990, there is no doubt that this Court has power to amend the certificate. <u>See</u>, <u>In re Shrewsbury</u>, No. 94-16736 1996 WL 64988, at *1 (9th Cir.1996, Jan. 12, 1996.) (holding that court had jurisdiction to amend pre-1990 naturalization orders, but did not say whether it had power to amend post 1990. <u>See</u> also, <u>In re Lee</u>, 2007 WL 926501 at *1 (N.D.Cal. Mar.26, 2007).

[13] <u>See</u> generally, Judge Learned Hand's comment in <u>In re Denny</u>, 240 F. 845, 846 (S.D.N.Y.1917)). ("[N]o one wants gratuitously to impose… a literal application of so detailed a statute, [is] a needless irritation, to a defenseless class of persons necessarily left to the guidance of officials, except in so far as the courts may mitigate the rigors of their interpretation."). Judge Learned Hand's passage was more recently quoted in <u>Kouanchao v. U.S. Citizenship and Immigration Services</u>, 358 F. Supp. 2d 837, 839 (D.Minn. 2005).

jurisdiction should be cases that are cabined by the facts in Garcia (or at least facts strikingly similar thereto). This should ensure that the holding is not unduly expanded. To that end, the Court also reinforces that the 'clear and convincing' evidentiary standard should be the relevant standard where name change amendments are sought. This standard should ensure that any amendment is a deserving one, with little doubt as to whether the amendment should be made to correct a clerical error made at the time of naturalization. The standard seeks to guard against misuse or fraud on the party seeking to change its name – and to maintain that permanent records of the Court disclose the *actual* facts upon which naturalization is based.

### 5. Application of Relevant Law

In applying the above principles, the critical issue becomes whether clerical error existed at the time of Petitioner's naturalization oath so to invoke subject matter jurisdiction to allow amendment of his Certificate of Naturalization. Based on the facts before the Court, this question must be answered in the negative. The reason is two-fold: first, there is nothing in the record filed by Petitioner (or Respondent) that reveals clerical error made in the preparation of the Petitioner's petition for naturalization. Even upon a liberal construction of the Petition, there is nothing that suggests clerical error with respect naturalization of the Petitioner.

Second, and unlike the facts in Garcia, this is not a case where Petitioner's name could be confused by anyone involved in the naturalization process. Specifically, there is nothing in the evidence to suggest that Petitioner sought to rely upon his native born Vietnamese name at the time of his petition. On the contrary, he states that he "chose the name Richard Kennedy, based on the names of two previous U.S. Presidents." See, Pet. at ¶ III(a) The fact that Petitioner made this choice is significant – and a fact that creates 'daylight' between this case and facts stated in Garcia. This view is buttressed by the lack of evidence showing that Petitioner was confused as to whether he should have used his native born name for the purpose of the naturalization oath (or not).

In sum, use of Petitioner's name (Kennedy) on his Certificate of Naturalization was *not* caused by clerical error. Because there was no clerical error at the time of his naturalization, this

1   Court is without subject matter jurisdiction to grant the relief sought by Petitioner. As the Court

2   lacks jurisdiction, this part of the petition must be dismissed pursuant to Fed. R. Civ. P. 12 (h)(3).[14]

3   **B.     Whether Petitioner has met his burden of proof to show his entitlement to an**

4   **amended Certificate of Naturalization that bears a different date of birth to that presently**

5   **inscribed on the record?**

6   Respondent seeks to deny Petitioner's part of the Petition seeking relief to amend the date

7   of birth on his Certificate of Naturalization. Respondent seeks to do so by grant of partial summary

8   judgment. The standard applied to a motion seeking "partial summary judgment is identical to the

9   standard for a motion seeking summary judgment of the entire case." See, Gauntlett v. Illinois

10  Union Ins. Co. No. 5:CV 11-00455, 2011 WL 5191808, at *1, 2011 U.S. Dist. LEXIS 126230 *12-

11  13 (N.D.Cal. Nov. 1, 2011))   A motion for summary judgment should be granted if "there is no

12  genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."

13  See, Fed. R. Civ. P. 56(a); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). A

14  genuine issue for trial exists if the non-moving party presents evidence from which a reasonable

15  jury, viewing the evidence in the light most favorable to that party, could resolve the material issue

16  in his or her favor. See, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49, 106 S. Ct. 2505,

17  91 L.Ed.2d 202 (1986); Barlow v. Ground, 943 F. 2d 1132, 1134–36 (9th Cir.1991).

18  Summary judgment must be granted where a party "fails to make a showing sufficient to

19  establish the existence of an essential element to that party's case, on which that party will bear the

---

[14] Respondent also asserted in its brief that the Court could not change the name based on the decision in United States v. Soltero, 510 F.3d 858, 867 (9th Cir. 2007). That decision involved a criminal matter – which is distinct from the naturalization context of the present case. In Soltero, the court stated that "*no authority vests with the federal courts to grant a name change*. If the defendant wishes to legally change his name under California law, he must follow the procedures allowed under state law." Id. It was this strong verbiage that indicated that Respondent's case was one that sought to deprive the Court of jurisdiction in *all* cases where name changes were involved – including cases involving clerical errors. In the Court's opinion, it is difficult to subscribe to how the statement in Soltero can square with 8 U.S.C. § 1447(e) ("It shall be lawful at the time…for the court…to make a decree changing the name of said person…".)  The provision expressly states that at a naturalization oath a court may make a decree changing a person's name. The provision is at odds with Soltero and suggests that the statement was taken out of context in the instant case. Further, and to make sense of the statement, it is true that a person may only change their name in California based on the common law or state court procedures. See Cal. Civ. Proc. § 1275. But, this should not trump a federal court's power to change a person's name in the naturalization context. See, 8 U.S.C. § 1447(e).

12

Case No. 5:11-cv-02407-EJD
ORDER TO DISMISS FOR LACK OF JURISDICTION AND MOTION FOR SUMMARY JUDGMENT.

burden of proof at trial." See, Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). There, the Court held that defendant could meet its initial burden for summary judgment "by 'showing' that there [was] an absence of evidence to support the nonmoving party's case." Id. at 325. See also, Samuels v. Holland American Line–USA Inc., 656 F. 3d 948, 952 (9th Cir.2011) (citing Fed. R. Civ. P. 56(a)).

Where the party moving for summary judgment would not bear the ultimate burden of persuasion at trial, it must either produce evidence negating an essential element of the non-moving party's claim or show that the non-moving party does *not* have enough evidence of an essential element *to carry its ultimate burden of persuasion at trial*. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir.2000). (*emphasis added*).

Here, it is important to note that neither party argues that triable issues of fact remain regarding the Petition.[15] Instead, the task of the Court is to determine whether the moving party – namely the Respondent – can show that the non-moving party (Petitioner) does not have enough evidence to carry its ultimate burden of persuasion at trial. Id. This was the task before the court in Nissan Fire; it is the same task that must be assessed here.

**1. Jurisdiction to Amend Date of Birth**

In Matter of Shrewsbury, the Ninth Circuit held that the courts had jurisdiction to amend pre-1990 naturalization orders. 1996 WL 64988, *1. There, the Court found that "because the order naturalizing the petitioner was a court order, the court had jurisdiction under the prior statute to amend it." Id.[16] See, also Binh Quang Le v. U.S. Citizenship and Immigration Services, Dist. Director, NO. C11-01871, 2011 WL 3678909 (N.D.Cal. Aug. 22, 2011) and, In re Lee, No. C06-80150 2007 WL 926501 *1-2 (N.D.Cal. Mar.26, 2007). [17]

---

[15] Note – With respect to the Respondent's motion for summary judgment, the Petitioner filed no written material in opposition.

[16] The Circuit panel reversed the district court's conclusion that it lacked jurisdiction under the Immigration and Naturalization Act of 1990 because that act authorizes only the Attorney General to amend naturalization orders. See, 8 U.S.C. § 1451(h). Matter of Shrewsbury, 1996 WL 64988 *1.

[17] The Respondent cites this case in its brief discussing the relevant regulations and their application to the present case. Absent a court order, Respondent also noted that it cannot amend a naturalization certificate except to correct its own clerical or typographical errors. See, § 338.5(a); § 334.16(b).

Here, although Respondent asserted that the Court did not have jurisdiction to make a 'name change' amendment to the Petitioner's Certificate of Naturalization; that same submission is not made with respect to the 'birth date' amendment. Rather, Respondent concedes that the Court *does* have jurisdiction to grant the amendment because Kennedy was naturalized in 1984. See, Mtn Brief, Dkt Item No. 20, at 5 and Pet., ¶ III(c) and CAR 064.

**2. Burden of Proof to Amend Date of Birth**

Petitioner seeks to amend his naturalization certificate so that it reflects his purported birth date of January 1, 1952. The date of birth, presently inscribed, is January 1, 1955. For the substantive claim, the burden of showing that the 1955 date is incorrect lies with Petitioner.[18] In re Lee, 2007 WL 926501 *1; see also, Kouanchao v. U.S. Citizenship and Immigration Services, 358 F. Supp. 2d 837, 838 (D.Minn.2005). The burden is justified on the basis that the federal regulations – governing administrative amendments – are resistant to change of birth dates for "any reason other than clerical error on the part of U.S. officials." Vargai 932 F. Supp. 1245, 1246.

**3. Evidentiary Standard to Amend Date of Birth**

Not only does Petitioner carry the burden of showing that the 1955 date of birth is incorrect, but he must do so by establishing that there is "unequivocal evidence" to support his Petition. In re Lee, 2007 WL 926501, at *2–3; In re Shrewsbury,1996 WL 64988, at *1; Duc Minh Ha v. U.S. Citizenship and Immigration Services, No. 05-MC-0059, 2006 WL 1997360 *2-3, (D.Minn, Jul. 14, 2006); Kouanchao, 358 F.Supp.2d at 838–39; Varghai, 932 F.Supp. at 1246–47.

Some courts suggest that an 'unequivocal evidence' standard equates with the 'clear and convincing' standard in the immigration context. See, Hussain v. U.S. Citizenship and Immigration Services, 541 F.Supp.2d at 1087. In that case, the court said: "Few courts have actually used the phrase 'clear and convincing evidence,' but that, in reality, is the standard of proof that most courts

---

[18] As discussed above, it was Respondent who moved for summary judgment; and thus the Respondent must show in accordance with the principles of summary judgment that Petitioner has not met its burden of proof. See generally, Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir.2000). (The moving party must show that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.)

seem to have applied…. The unequivocal-evidence standard seems to be just another name for the clear-and-convincing-evidence standard." Id.

In essence, the Court finds that there is no real difference between the standards (and the names used to label them).[19] What is important is that the evidentiary standard applied – to make an amendment – is a high one. This is grounded in the notion that naturalization certificates are important documents on which government and private entities rely. One specific concern is that amendments to the naturalization records may hasten the availability of government benefits for senior citizens. The high standard is thus critical to guard against fraud and "prejudice to the government." See, Binh 2011 WL 3678909 *2; Kouanchao, 358 F.Supp.2d at 838. Liu v. INS, 1998 WL 809037, at *2 (N.D.N.Y. Nov. 17, 1998) ("[P]etitioner must satisfy a stringent burden in order to effectuate a change."). See generally, Julia Shear Kushner, "The Right to Control One's Name", UCLA LR 313 (2009), 318–21.

Here, Petitioner seeks to amend his Certificate of Naturalization so that it reflects his date of birth, being January 1, 1952. In support, he relies upon a birth certificate that allegedly confirms the purported date. See, Pet., Ex. A and CAR 0025-26. Respondent challenges the Petition and the Petitioner's asserted amendment seeking the new date. The attack on the Petition is four-fold.

First, Respondent asserts that Petitioner has provided *no* evidence that there were any clerical errors made by the government in the preparation of his naturalization certificate; nor that

---

[19] See, the Supreme Court's discussion in Addington v. Texas, 441 U.S. 418, 423-4. ("The intermediate standard, which usually employs some combination of the words "clear," "cogent," "unequivocal," and "convincing," is less commonly used, but nonetheless "is no stranger to the civil law." [citations omitted]. One typical use of the standard is in civil cases involving allegations of *fraud* or some other *quasi-criminal wrongdoing* by the defendant. The interests at stake in those cases are deemed to be more substantial than mere loss of money. Similarly, this Court has used the "clear, unequivocal and convincing" standard of proof to protect particularly important individual interests in various civil cases. See, e.g., Woodby v. INS, 385 U.S. 276, 284 (deportation); Chaunt v. United States, 364 U.S. 350, 353, (1960) (denaturalization)." The interchangeability of the adjectives – 'clear and convincing' and 'unequivocal' – only serve to reinforce the notion that there is no great difference in their application, and that the verbiage merely serves as different means of articulating the same intermediate standard. Moreover, given that the clear and convincing standard is applied with respect to 'name change' amendments as was held in Garcia and this case, there would see no reason in logic to find that an unequivocal standard is any different to other types of amendments to naturalization certificates.

the Petitioner was confused with respect to translations from Vietnamese to English.[20] The Court finds this to be quite telling, and one reason, amongst others, for finding against Petitioner.

Second, Respondent asserts that Petitioner's Vietnamese birth certificate is unreliable. Petitioner provides a birth certificate in Vietnamese that shows a birth date of January 1, 1952. See, Pet. Ex A. Respondent notes that the document is unauthenticated. Upon closer inspection, the Court agrees. This cuts in favor of the Respondent in two respects: (1) it shows that Petitioner does *not* provide unequivocal proof of his actual birth date, and (2) it shows that Petitioner would not have enough evidence to carry the ultimate burden of persuasion at trial. Id. In re Hua, No. 07 MC 04 S, 2007 WL 1087563, at *2 (W.D.N.Y. April 9, 2007) (holding that the court could not make a determination based on the unauthenticated birth record from Vietnam in support of the application.).

Third, Respondent attacks inconsistencies in the Petitioner's own Petition. In one paragraph, he claims he hid the fact that he was born in 1952 from Vietnamese authorities so he would be ineligible for the draft. See, Pet. at ¶ III(b). In the previous paragraph, he states that "upon *learning* of his [1952] date of birth" in 1992, he then sought a court order to adjust his date of birth to reflect the new date. Id. at ¶ III(a) and Ex. B. Both facts cannot be true, and there is no explanation in the record as to why this discrepancy exists. This further cuts in favor of the Respondent in showing that there is insufficient evidence on behalf of the Petitioner to carry his burden of persuasion at trial. See, Celotex Corp, 477 U.S. 322-23 and Nissan Fire, 210 F.3d 1102.

Fourth, Respondent intimates that Petitioner is attempting to change his birth date for an undue benefit, which would prejudice the government. See, Kouanchao, 358 F.Supp.2d at 838. *Cf.* see Varghai, 932 F.Supp. at 1247. While this argument of Respondent is not determinative of the overall reasoning, it does supplement what the Court has reasoned above. Specifically, Respondent argues that if the Court were to grant the amendment, the Petitioner would jump from age 57 to 60.

---

[20] Even if there were evidence of mistake, there is much evidence on file that that cuts against the Petitioner's case. Specifically, he used the 1955 date to: a) enter the United States in 1975. See, CAR 092; b) apply for a green card application Id. 07-080; c) apply for citizenship; Id. 068-69; d) secure a driver's license; and e) apply for a new naturalization certificate Id. 092. This contrasts with Kouanchao, where the court found no opportunity for fraud because the petitioner's birth date had already been changed by the Social Security Administration and state motor vehicles department.

16
Case No. 5:11-cv-02407-EJD
ORDER TO DISMISS FOR LACK OF JURISDICTION AND MOTION FOR SUMMARY JUDGMENT.

This jump in age is significant: at age 59 ½, individuals can take an early distribution from a retirement plan without incurring a tax penalty. See, 29 U.S.C. §§ 72(q)(1), 72(q)(2))(A); IRS, Pub, Individual Retirement Arrangements (IRAs) 52 (2011), available at www.irs.gov/pub/irs-pdf/p590.pdf (last visited April 23, 2012).[21]

There is nothing in the record to disavow the Respondent's assertion of prejudice. The Petitioner was given every chance to provide material opposing the Respondent's brief. He chose not to do so. As such, Respondent's argument – when viewed in the totality of the evidence – only reinforces the notion that the Petitioner's evidence is unreliable and potentially proffered to gain "undue benefit" from the government. See, Duc Minh Ha 2006 WL 1997360 *6-8 and Fn 5.

In sum, the Court finds in favor of the Respondent's motion for summary judgment. Respondent, therefore, has discharged its initial burden of showing that Petitioner does not have enough evidence to carry its ultimate burden of persuasion at trial. Moreover, and given the questionable authenticity of the Petitioner's 1952 birth certificate – and the paucity of evidence overall – Petitioner has not established that the 1955 birth date is incorrect.

Motion for summary judgment is granted in favor of Respondent.

### IV. CONCLUSION

For the reasons stated above, the Court grants the Respondent's motion for dismissal pursuant to Fed. R. Civ. P. 12(b); as well as motion for summary judgment dismissing the relief sought by Petitioner to amend his Certificate of Naturalization.

Since this order represents a final resolution of all the issues in this case, judgment will be entered in favor of the Respondent and the Clerk will close this file, accordingly.

**IT IS SO ORDERED.**

Dated: May 18, 2012

_____
EDWARD J. DAVILA
United States District Judge

---

[21] The Court takes judicial notice of the content in this website pursuant to FRE 201(b), that is, the content is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

17

Case No. 5:11-cv-02407-EJD
ORDER TO DISMISS FOR LACK OF JURISDICTION AND MOTION FOR SUMMARY JUDGMENT.